{¶ 24} I recognize the benefits that inure to a municipality when its public employees reside within its boundaries. Logic tells us that public taxpayer dollars are more likely to be reinvested in the community and help maintain the municipality's vitality. Public salaries will most likely be reinvested in the city. Employees may invest in real estate, with attendant property taxes supporting the schools and other city services; may support community businesses; and may support the municipality's community, cultural, social and political programs and projects.
 {¶ 25} And logic also tells us that when a public employee resides within the employer community, that employee is enfranchised. Employees are able to vote for (or against) the elected officials who set policy and make the decisions directly affecting employment, as well as tax and other income generation devices that provide fair salaries and benefits and employment opportunity. Convenience and minimal expense of travel to nearby employment may be also a benefit to the employee who resides within the employer municipality.
 {¶ 26} However, all cities and communities cannot offer their employees the necessary and desired quality of life services and conditions. Hospitals and other medical services, religious institutions, educational opportunities as well as other necessities may not be readily available within the city limits. Municipalities may argue that unless their employees live within the city it may be without sufficient resources to provide or maintain those very same services and conditions. Employees may argue that because the *Page 10 
city does not provide or maintain certain services or conditions, they must choose between their own and their family's needs and municipal employment.
 {¶ 27} Resolution of this conflict, by requiring municipal employees to reside within the employer-municipality, places the burden on the employees as a condition of employment. This clearly, to me, affects their comfort, health, safety and, most particularly, their general welfare. R.C. 9.481 removes this burden by prohibiting a political subdivision to dictate where their employees may live.
 {¶ 28} Section 34, Article II, Ohio Constitution authorizes state legislation regulating wages and employment conditions and includes "providing for the comfort, health, safety and general welfare of all employees."
 {¶ 29} The trial court relied on State ex rel. Bd. Of Trustees ofPension Fund v Bd. Of Trustees of Relief Fund (1967), 12 Ohio St.2d 105
and Rocky River v. State Emp. Relations Bd. (1989), 43 Ohio St.3d and found R.C. 9.481 constitutional.
 {¶ 30} The trial court correctly relied on that line of cases. Section34, Article II, Ohio Constitution must be broadly construed. Therefore, residency restrictions by political subdivisions affect the general welfare of employees. I would hold that R.C. 9.481 is constitutional. *Page 1